UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Electric Insurance Company,
as subrogee of John M. Dineen

   v.    Civil No. 10-cv-435-PB

BrassCraft Manufacturing Company;
Lakeside Plumbing & Heating, Inc.;
The Granite Group Wholesalers, LLC;
Kohler Co., Inc.; and LSP Products
Group, Inc.


**O R D E R**

In this subrogation action, which involves a products-liability claim based on a design defect, defendant BrassCraft Manufacturing Company ("BrassCraft") moves to compel co-defendant LSP Products Group, Inc. ("LSP") to produce certain exemplar parts for testing. LSP objects. For the reasons that follow, BrassCraft's motion to compel is granted in part and denied in part.

**Background**

This case arises from losses sustained by plaintiff's subrogor, John Dineen, when a compression coupling fitting that was part of a water line leading to a bathroom faucet in Dineen's house failed, causing substantial water damage. The fitting that failed was manufactured by BrassCraft. BrassCraft,

in turn, alleges that its fitting failed as a result of, among other things, design defects in two other parts to which its fitting was connected.  Those parts, a nut and an insert fitting, were components of a flexible water supply line, part number UO2522-J2Z7, that was manufactured by LSP and incorporated into the Kohler faucet that Lakeside Plumbing & Heating installed in Dineen's bathroom.  BrassCraft has asked LSP to produce 100 nuts and 100 insert fittings for testing. LSP has declined to do so, arguing that it no longer manufactures the UO2522-J2Z7 and, as a consequence, has no access to either the nuts or the insert fittings BrassCraft requested.  Moreover, it says that the only nuts and insert fittings to which it does have access are significantly different from the parts at issue, which exempts them from discovery.

## The Relevant Law

In a recent order on which both parties rely, Judge Laplante wrote:

> As the defendants point out, "the party seeking information in discovery over an adversary's objection has the burden of showing its relevance."  Caouette v. OfficeMax, Inc., 352 F. Supp. 2d 134, 136 (D.N.H. 2005) (citing cases).
>
> This burden, however, should not be overstated. As the court of appeals has instructed, "district courts are to interpret liberally the discovery provisions of the Federal Rules [of] Civil Procedure

to encourage the free flow of information among litigants." Heidelberg Ams., Inc. v. Tokyo Kikai Seisakusho, Ltd., 333 F.3d 38, 41 (1st Cir. 2003). This philosophy extends to the relevance standard of Rule 26(b)(1), which "[m]ost courts [to] have addressed the issue find . . . is extremely broad." 8 Charles Alan Wright et al., Federal Practice and Procedure § 2008, at 133 (3d ed. 2010).

    This liberal approach extends to products liability cases like this one. As one treatise notes, "[c]ourts routinely permit discovery of similar, if not identical models in products liability litigation, provided they share with the accident-causing model at least some characteristics pertinent to the legal issues in the litigation," as well as "[i]nformation regarding whether other purchasers or users experienced similar problems with the product." 3 Louis R. Frumer & Melvin I. Friedman, Products Liability § 17 .01[1][c][I], at 17-6 (rev. ed. 2001 & 2011 supp.) (footnotes omitted).

West v. Bell Helicopter Textron, Inc., No. 10-cv-214-JL, 2011 WL 6371791, at *2 (D.N.H. Dec. 20, 2011). In another opinion on which both parties rely, Judge Duffy further explained:

    Although there is "no black letter rule of law regarding discovery of [other] models in products liability cases . . . discovery of similar, if not identical, models is generally permitted." Hofer v. Mack Trucks, Inc., 981 F.2d 377, 381 (8th Cir. 1992). Courts generally undertake a "fact specific determination of the extent of the similarities and dissimilarities" of claimed similar vehicle models to determine if discovery of a model other than that involved in an accident in litigation should be allowed under Rule 26. Id. at 381. "[D]ifferent models of a product will be relevant if they share with the accident-causing model those characteristics pertinent to the legal issues raised in the litigation." Fine v. Facet Aerospace Prods. Co., 133 F.R.D. 439, 441 (S.D.N.Y. 1990). The models must share "pertinent characteristics" as they relate to the accident at issue. Hofer, 981 F.2d at 381. What is required is a specific factual showing of

3

substantial similarity.  Conclusory statements of alleged similarity are not enough.  See Piacenti v. Gen. Motors Corp., 173 F.R.D. 221, 225 (N.D. Ill. 1997).

Gibson v. Ford Motor Co., 510 F. Supp. 2d 1116, 1120 (N.D. Ga. 2007).

### The Nut

LSP contends that: (1) BrassCraft's request for 100 nuts is excessive; (2) the nut it currently uses, which is the only one to which it has access, is not manufactured by the same supplier that manufactured the nut it incorporated into the UO2522-J2Z7. To demonstrate the dissimilarity between the old nut and the new one, LSP offers the affidavit of its Director of Engineering, Marshall Henningsen, who states:

> LSP still uses the Nut in the manufacture of some of its hoses.  LSP does not manufacture the Nut, but purchases it from two suppliers.  The two suppliers LSP uses now are different from the two suppliers it used when the [UO2522-J2Z7] was manufactured.  The suppliers LSP used at the time the [UO2522-J2Z7] was manufactured were located in the U.S.  Today's suppliers are in China.  I do not know whether the suppliers LSP currently uses manufacture the [N]ut in the same manner in which the Nut was manufactured. Given the passage of more than five years, it is extremely likely that the chemical composition, hardness and/or machining process of the Nut changed during that time, especially given the fact that the Nut is now manufactured in China.

LSP's Obj., Ex. A, Henningsen Aff. (doc. no. 64-1) ¶ 4.

Henningsen's affidavit says it all, and carries the day for BrassCraft.  According to Henningsen, LSP still uses the same

4

nut that was used to manufacture the UO2522-J2Z7.  Thus, this is not a situation in which the court must analyze BrassCraft's entitlement to the discovery of an item that is merely similar to the object at issue.  See Hofer, 981 F.2d at 381 (denying discovery concerning model F and W trucks, designs of which were predecessors to design of the MH model truck involved in products-liability action); Gibson, 510 F. Supp. 2d at 1121 (denying discovery concerning Ford F-150 pickup truck in products-liability action involving Ford F-350 Super Duty pickup truck); Piacenti, 173 F.R.D. at 226 (denying discovery concerning Suzuki Samurai in products-liability action involving General Motors GEO Tracker); Schaap v. Exec. Indus, Inc., 130 F.R.D. 384, 387 (N.D. Ill. 1990) (allowing discovery into Prestige motor homes from model years 1982 through 1989 in breach of contract and warranty action based upon deficiencies in 1989 model Prestige motor home).  At the very least, Henningsen's affidavit confirms that the nut LSP now uses has the same dimensions and design as the UO2522-J2Z7.  As for differences, Henningsen's affidavit consists of nothing more than conjecture.  As BrassCraft suggests, LSP is free to inquire into the validity of any test results at trial but, at this point, Henningsen's rank speculation about the composition and manufacture of LSP's current nut gives LSP no valid basis for declining to provide BrassCraft with the 100 nuts it requested.

**The Insert Fitting**

The insert fitting, a part LSP refers to as the "Brass Barb," is a bit more complicated.  BrassCraft asked LSP for 100 of the insert fittings used in the UO2522-J2Z7.  As with the nut, LPS said that it stopped making the UO2522-J2Z7 in 2008, and no longer has any of the Brass Barbs BrassCraft asked for.  Here is where things get a bit complicated.

Henningsen describes the Brass Barb as "a 'hard cone,' comprised of a solid brass fitting with barbs at the end," Henningsen Aff. ¶ 8, and further states that "[n]one of the other products LSP currently manufactures contain the Brass Barb," id. ¶ 5.  But he also says this:

> LSP currently manufactures flexible supply lines with either a hard cone, or a soft cone.  The components which comprise the connection end (i.e. the "cone") of the current hoses are different than the components which comprise the connection end of the [UO2522-J2Z7].  The brass connection components in the [UO2522-J2Z7] were manufactured using C36000 (free machining) brass.  In the hoses which LSP currently manufactures - both the "hard cone" and the "soft cone" hoses - the brass connection components are manufactured using low lead Enviro brass.  The types of brass used to make the connection components in the [UO2522-J2Z7] and today's hoses are different and would yield different results if tested in the manner in which BrassCraft intends.  The two brass components have different hardnesses, have different characteristics, have significantly different chemical compositions, and underwent different machining processes[.]

Id. ¶ 7.

Based on Henningsen's affidavit, the hard cone LSP currently uses to manufacture its flexible supply lines could be identical to, or substantially similar to the Brass Barb with respect to the relevant characteristics, which, according to BrassCraft, are its dimensions.  Or, the new insert fitting could be entirely dissimilar to the Brass Barb.  In any event, it is BrassCraft's burden to show substantial similarity.  See West, 2011 WL 6371791, at *2; Gibson, 510 F. Supp. 2d at 1120. With respect to the nut, BrassCraft did not have to produce any evidence because Henningsen's affidavit provided BrassCraft with all the proof it needed.

But with respect to the insert fitting, Henningsen's affidavit is not so supportive of BrassCraft's position. BrassCraft argues:

> LSP's opposition is based upon a claim that the supply line it has been assembling in China since 2008 [is] not similar to the supply line that was attached to the Kohler faucet installed at the Dineen residence.  LSP answered interrogatories which stated they first began manufacturing the incident supply line for Kohler beginning in 2001 and made "no changes **to the design** since then."  [emphasis added]  See, Ex. G, LSP's answers to interrogatories.

BrassCraft's Reply (doc. no. 70) ¶ 5.  There are two problems with BrassCraft's argument.

First, BrassCraft does not appear to have accurately quoted LSP's interrogatory answer.  Rather than saying that it had made "no changes to the design since then," LSP actually said:

7

> If BrassCraft is seeking information pertaining to the model of supply line identified by Kohler in its discovery responses, one of which may have been affixed to the Kohler faucet involved in the alleged incident, which LSP has not substantiated, then LSP responds that the supply line was first manufactured in 2001. Answering further, no major changes were made to this model of supply line. As LSP does not manufacture all of the supply line's component parts, it is unable to respond as to those components it does not manufacture.

BrassCraft's Reply, Ex. G, at 5-6. BrassCraft's unfortunate misquotation of LSP's interrogatory answer leads to the second, more substantive problem with its argument.

While BrassCraft portrays LSP as saying that the design of the supply line it currently manufactures has not changed since 2001, LSP only said that it had made no major changes to the "model of supply line" that may have been affixed to Dineen's faucet. According to Henningsen, the model of supply line that may have been affixed to Dineen's faucet was the UO2522-J2Z7. Henningsen has also testified that the UO2522-J2Z7 was discontinued in 2008. So, by saying that it had made no major changes to the model of supply line that may have been affixed to Dineen's faucet, LSP said <u>nothing</u> about similarities between the UO2522-J2Z7 and the hard-cone supply line it currently makes. The discontinuation of the UO2522-J2Z7 may be a red herring, and the UO2522-J2Z7 may be similar enough to LSP's current hard-cone supply line to justify ordering LSP to produce 100 of the current supply line's insert fittings for testing.

But BrassCraft bears the burden of making "a specific factual showing of substantial similarity," Gibson, 510 F. Supp. 2d at 1120 and, at this point, is has failed to carry that burden.

## Conclusion

For the foregoing reasons, BrassCraft's motion to compel, document no. 62, is granted in part and denied in part. Specifically, LSP is ordered to provide BrassCraft with 100 nuts. But, as to the insert fitting, BrassCraft's motion to compel is denied. That denial, however, is without prejudice to BrassCraft's filing a properly supported motion to compel the production of the insert fittings it seeks.

SO ORDERED.

_____
Landya McCafferty
United States Magistrate Judge

May 2, 2012

cc:  Doreen F. Connor, Esq.
     Andrew D. Dunn, Esq.
     Gerard O. Fournier, Esq.
     Robert J. Gallo, Esq.
     Russell F. Hilliard, Esq.
     Kelly Martin Malone, Esq.
     Kenneth Eric Rubinstein, Esq.
     William H. Whitney, Esq.